UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GIOVANNI CHRISTOPHER WILLIAMS,<br><br>            Petitioner,<br><br>   v.<br><br>M. E. SPEARMAN,<br><br>            Respondent. | No.  13-cv-1407-GEB-CKD (HC)<br><br>FINDINGS AND RECOMMENDATIONS |

     Petitioner, a state prisoner, is proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Petitioner was convicted by a jury of infliction of corporal injury to a spouse and making criminal threats.  The jury also found true allegations that petitioner personally used a knife in commission of the criminal threats, had one prior serious felony conviction, had one prior prison term commitment, and had one prior strike.  Petitioner was sentenced to 10 years in state prison.[1]  Petitioner challenges his conviction on the ground that he received ineffective assistance of counsel because trial counsel failed to adequately present a defense and provided inadequate advice with regard to a plea bargain.  Respondent has filed an answer and petitioner has filed a traverse.  (ECF Nos. 13, 14.)  Upon careful consideration of the

/////

---

[1] Petitioner's sentence was ultimately reduced to 9 years in state prison.  People v. Williams, 2012 WL 1353881, at *1 (Cal. App. 1 Dist. April 19, 2012); Resp't's Lod. Doc. B.

1

record and the applicable law, the undersigned will recommend that petitioner's application for habeas corpus relief be denied.

BACKGROUND

I.   Facts

The victim testified that she had been married to petitioner for one year. RT 143. On March 8, 2011, petitioner returned home at 11:30 p.m., after drinking with relatives. RT 144–45. The victim described petitioner as "very" intoxicated. RT 145. She testified that when petitioner arrived, he went into the bedroom and locked himself inside. RT 147. The victim testified that she heard a breaking sound from behind the door and feared petitioner was breaking into her lock box. RT 147. The victim knocked on the bedroom door, seeking to enter but petitioner ignored her. RT 149. The victim entered the bedroom by breaking the bedroom window with a vase. RT 150. She went to the closet to secure the lock box. RT 150.

The victim testified that as she was examining the lock, petitioner jumped on her from behind and struck her face with a closed fist about three times. RT at 151–52. She further testified that petitioner held her on the ground by the hair and threatened to kill her if she did not reveal her new lover. RT 153. She also testified that petitioner later threatened her with a kitchen knife if she did not reveal the truth, holding the knife right up to her. RT 156–57. Petitioner led the victim at knife point to the couch in the living room and continued questioning her, slashing the couch when the answers angered him. RT 159, 162, 164. The victim told petitioner that she had been cheating on him with three different men. RT 168. After several hours of questioning, petitioner appeared to be satisfied with her answers and fell asleep. RT 169. Approximately one and half to two and half hours later, the victim called the police. RT 171.

The victim testified that she suffered a swollen black right eye, a lump on the left side of her forehead, scratches on her face, and bruises all over her arms and legs. RT 174. Officer Tatum, who responded to the domestic violence call from the victim, testified that the living room was in disarray when he arrived, the couch was cut up, and there were several kitchen knives visible in the kitchen, including a broken kitchen knife in the sink. RT 264. He observed injuries to the victim consistent with the victim's testimony. RT 263–64. He also observed scratch marks

on petitioner's arms. RT 266. He testified that petitioner did not appear intoxicated. RT 269.

II.    Procedural History

On June 9, 2011, following a jury trial in the Solano County Superior Court, petitioner was found guilty of infliction of corporal injury to a spouse and making criminal threats. The jury also found true allegations that petitioner personally used a knife in commission of the criminal threats, had one prior serious felony conviction, had one prior prison term commitment, and had one prior strike. CT 114–17. Petitioner was sentenced to ten years in state prison. CT 231−35. On direct appeal, the California Court of Appeal for the First Appellate District reduced petitioner's sentence but otherwise affirmed the judgment. Williams, 2012 WL 1353881, at *1. Petitioner did not seek review in the California Supreme Court.

Petitioner subsequently filed four state habeas petitions. His first petition, filed in the Solano County Superior Court on August 17, 2011, was denied on October 12, 2011. (ECF No. 1 at 4.) On August, 2012, he filed his second state petition with the trial court which was denied on October 19, 2012. (ECF No. 1 at 5, Ex. A.) His third petition, filed on February 5, 2013 with the California Court of Appeal, was denied on March 20, 2013. (ECF No. 1, Ex. A.) His final state petition, filed on March 29, 2013 with the California Supreme Court, was denied on May 22, 2013. (Resp't's Lod. Doc. D.) Petitioner then initiated the instant proceeding filing his federal petition on July 15, 2013. (ECF No. 1.)

## ANALYSIS

I.    AEDPA

The statutory limitations of federal courts' power to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). The text of § 2254(d) states:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim-
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

3

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

As a preliminary matter, the Supreme Court has recently held and reconfirmed "that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'" Harrington v. Richter, 131 S. Ct. 770, 785 (2011). Rather, "when a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." Id. at 784–785, citing Harris v. Reed, 489 U.S. 255, 265 (1989) (presumption of a merits determination when it is unclear whether a decision appearing to rest on federal grounds was decided on another basis). "The presumption may be overcome when there is reason to think some other explanation for the state court's decision is more likely." Id. at 785.

The Supreme Court has set forth the operative standard for federal habeas review of state court decisions under AEDPA as follows: "For purposes of § 2254(d)(1), 'an unreasonable application of federal law is different from an incorrect application of federal law.'" Harrington, 131 S. Ct. at 785, citing Williams v. Taylor, 529 U.S. 362, 410 (2000). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Id. at 786, citing Yarborough v. Alvarado, 541 U.S. 652, 664 (2004). Accordingly, "a habeas court must determine what arguments or theories supported or . . . could have supported[] the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." Id. "Evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations.'" Id. Emphasizing the stringency of this standard, which "stops short of imposing a complete bar of federal court relitigation of claims already rejected in state court proceedings[,]" the Supreme Court has cautioned that "even a strong case for relief does not

/////

4

mean the state court's contrary conclusion was unreasonable." Id., citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

The undersigned also finds that the same deference is paid to the factual determinations of state courts. Under § 2254(d)(2), factual findings of the state courts are presumed to be correct subject only to a review of the record which demonstrates that the factual finding(s) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." It makes no sense to interpret "unreasonable" in § 2254(d)(2) in a manner different from that same word as it appears in § 2254(d)(1) – i.e., the factual error must be so apparent that "fairminded jurists" examining the same record could not abide by the state court factual determination. A petitioner must show clearly and convincingly that the factual determination is unreasonable. See Rice v. Collins, 546 U.S. 333, 338 (2006).

The habeas corpus petitioner bears the burden of demonstrating the objectively unreasonable nature of the state court decision in light of controlling Supreme Court authority. Woodford v. Viscotti, 537 U.S. 19 (2002). Specifically, the petitioner "must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." Harrington, 131 S. Ct. at 786–87. "Clearly established" law is law that has been "squarely addressed" by the United States Supreme Court. Wright v. Van Patten, 552 U.S. 120, 125 (2008). Thus, extrapolations of settled law to unique situations will not qualify as clearly established. See e.g., Carey v. Musladin, 549 U.S. 70, 76 (2006) (established law not permitting state sponsored practices to inject bias into a criminal proceeding by compelling a defendant to wear prison clothing or by unnecessary showing of uniformed guards does not qualify as clearly established law when spectators' conduct is the alleged cause of bias injection). The established Supreme Court authority reviewed must be a pronouncement on constitutional principles, or other controlling federal law, as opposed to a pronouncement of statutes or rules binding only on federal courts. Early v. Packer, 537 U.S. 3, 9 (2002).

The state courts need not have cited to federal authority, or even have indicated awareness of federal authority in arriving at their decision. Early, 537 U.S. at 8. Where the state courts have

not addressed the constitutional issue in dispute in any reasoned opinion, the federal court will independently review the record in adjudication of that issue. "Independent review of the record is not de novo review of the constitutional issue, but rather, the only method by which we can determine whether a silent state court decision is objectively unreasonable." Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003).

"When a state court rejects a federal claim without expressly addressing that claim, a federal habeas court must presume that the federal claim was adjudicated on the merits – but that presumption can in some limited circumstances be rebutted." Johnson v. Williams, 133 S. Ct. 1088, 1096 (2013). "When the evidence leads very clearly to the conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the prisoner to" de novo review of the claim. Id. at 1097.

## II. Petitioner's Ineffective Assistance of Counsel Claim

Petitioner contends counsel was ineffective because trial counsel failed to adequately present a defense on his behalf and convinced petitioner to reject the trial court's offer for a negotiated disposition of four years in state prison in exchange for pleading guilty to all charges in the information. Petitioner raised this claim in a state court habeas petition to the Solano County Superior Court, which denied his petition as follows:

> On August 20, 2012, Petitioner Giovanni Williams filed this petition for writ of habeas corpus. Petitioner claims that he received ineffective assistance of counsel (IAC). He alleges that his attorney did not adequately present a defense because she did not present evidence that the victim had been arrested for assaulting someone with a knife as a juvenile and counsel failed to ask the victim if she had a weapon during the incident underlying the crime. He also alleges that Judge Carter offered him a four year plea deal but counsel deficiently advised him not to take it because he could be acquitted if he went to trial.
>
> Successive, delayed, or piecemeal presentations of habeas claims constitute an abuse of the writ. (*In re Clark* (1993) 5 Cal.4th 750, 760–70; *In re Reno* (2012) 55 Cal.4th 428, 453.) Here, Petitioner filed a habeas petition on August 17, 2011, case no. FCR 286933, collaterally attacking the validity of his conviction in VCR210456 on various grounds, including IAC. Petitioner now raises these new grounds for IAC; however, he presents no legitimate justification for his failure to raise these claims in his earlier petition in which he already claimed IAC. (*Clark*, *supra*, 5 Cal.4th at pp. 768–70 & 774–75.) As such, these claims were presented in piecemeal and

> delayed fashion and should be denied. (*Id.* at pp. 768–70; *Reno*, *supra*, 55 Cal.4th at p. 453.)
>
> Even if these claims were properly before the court, Petitioner fails to state a prima facie case for relief. (*People v. Duvall* (1995) 9 Cal.4th 464, 475.) Petitioner alleges that his attorney did not adequately present a defense because she did not present evidence that the victim had been arrested for assaulting someone with a knife as a juvenile and she failed to ask the victim if she had a weapon during the incident underlying the crime. He also claims that Judge Carter offered him a four year plea deal but counsel deficiently advised him not to take it because he would be acquitted if he went to trial. However, Petitioner does not set forth any facts or reasonably available documentary evidence to support that counsel performed deficiently in anyway. He fails to include a declaration from his attorney or explain why he cannot. (*Strickland v. Washington* (1984) 466 U.S. 668, 687.) Judicial scrutiny of an attorney's performance is highly deferential. (*Id.* at 689; *People v. Bunyard* (1988) 45 Cal.3d 1189, 1215.) Petitioner fails to carry the burden of overcoming the strong presumption that counsel acted reasonably. (*Strickland*, *supra*, 466 U.S. at p. 689; *Bunyard*, *supra*, 45 Cal.3d at p.1215.)
>
> The petition for writ of habeas corpus is DENIED.

(ECF No.1, at 25–27.)

The test for demonstrating ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. <u>Strickland</u>, 466 U.S. at 688. To this end, the petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. <u>Id.</u> at 690. The federal court must then determine whether in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. <u>Id.</u> "We strongly presume that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." <u>Hughes v. Borg</u>, 898 F.2d 695, 702 (9th Cir.1990), citing <u>Strickland</u> at 466 U.S. at 689.

Second, a petitioner must affirmatively prove prejudice. <u>Strickland</u>, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> "That requires a

'substantial,' not just 'conceivable,' likelihood of a different result." Cullen v. Pinholster, 131 S. Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) quoting Richter, 562 U.S., at ----, 131 S. Ct., at 791.

The Supreme Court has emphasized the importance of giving deference to trial counsel's decisions, especially in the AEDPA context:

> In *Strickland* we said that "[j]udicial scrutiny of a counsel's performance must be highly deferential" and that "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." 466 U.S., at 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 [ ]. Thus, even when a court is presented with an ineffective-assistance claim not subject to § 2254(d)(1) deference, a [petitioner] must overcome the "presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Ibid.* (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83[ ] (1955)).
>
> For [petitioner] to succeed, however, he must do more than show that he would have satisfied *Strickland*'s test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. *See Williams*, *supra*, at 411, 323 U.S. 471, 65 S.Ct. 363, 89 L.Ed. 398[ ]. Rather, he must show that the [ ]Court of Appeals applied *Strickland* to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698–699, 122 S. Ct. 1843, 1852, 152 L.Ed.2d 914 (2002).

    A.    <u>Impeachment of Witness</u>

Petitioner alleges that his attorney did not adequately present a defense because she did not present evidence that the victim had been arrested for assaulting someone with a knife as a juvenile and she failed to ask the victim if she had a weapon during the incident underlying the crime. Petitioner's trial attorney argued at closing that petitioner acted in self-defense. RT at 310–26. In particular, trial counsel argued that the victim was the aggressor:

> Well, someone who you're engaged in an argument with, you leave the situation. You try to remove yourself. He physically removed himself from that situation, went into the bedroom, locked the door. She is banging on the door, banging on the door. Officer Tatem testified that he took a picture of that door. This is what the door ended up looking like. Now she wants you to believe that she didn't cause this damage, but she's banging on the door. She can't get into the room. So clearly she's trying hard to get into this room.

8

> Then she grabs the vase, goes out to the balcony. So she has to think about this. She has to grab a vase, go out on the balcony and bust the window. Why does she bust the window? Because she has to get into her lock box. Really? That's not really believable. You're in fear of this other man who has threatened to harm you in the past, you don't leave the apartment when he's removed himself from the apartment. You don't call the police. You don't call for help. Instead, you go into the room, break a window, climb in the window and actively engage him.

RT 310–11.

Trial counsel also argued that the victim lied throughout her testimony:

> Now, [the victim] tells you some things in her story, in her testimony that is just improbable, kind of impossible. It's kind of hard to believe. So the first thing she tells you is that she's so, so afraid of Mr. Williams. She's afraid of him today. She's afraid of him then. She's afraid of him before. But if you are afraid of someone, you don't break a window to get at him. If you think this man is going to kill you, you don't break a window to get at him. So that story is just kind of hard to believe. It's kind of improbable.
>
> * * *
>
> Now the other thing that's unbelievable in a borderline probably out-and-out lie is that she didn't do anything to Mr. Williams. So she's aggressive enough to bang on the door. She's aggressive enough to break a window with the vase and climb through the window, but she doesn't touch Mr. Williams. She doesn't scratch him. She doesn't try to hit him. She doesn't do anything. She just sits there and takes a beating.
>
> Well, ladies and gentlemen, not only is that unbelievable based on her conduct throughout this entire situation, there's evidence that Mr. Williams had injuries. He's got redness and abrasions on his arm. He's got redness and abrasions on his shoulder. And he's got some other scratches and scrapes. So if you're wanting to tell the truth and wanting to put the truth out there, why lie about the fact that you didn't touch Mr. Williams at all?

RT 312–14. In short, petitioner's trial counsel presented a self-defense argument based on the fact that the victim was the aggressor and that she lied throughout her testimony.

Petitioner's assertion that trial counsel should have impeached the victim with a prior incident in which the victim, while a juvenile, was arrested for assaulting someone with knife fails because the decision to impeach a witness is a matter of trial strategy.[2] See Gustave v.

---

[2] At a pre-trial conference, defense counsel clarified that she would not be introducing evidence

9

United States, 627 F.2d 901, 905 (9th Cir. 1980) (impeachment "obviously a matter of trial tactics and falls short of ineffective counsel"). Petitioner also asserts that trial counsel should have asked the victim whether she had a weapon during the incident underlying the crime. Again, the decision of what questions to ask a witness is a matter of trial strategy. As demonstrated above, trial counsel challenged the victim's truthfulness directly and as to the facts before the jury. That her strategy was unsuccessful is not a basis for relief.

### B. Plea Bargain

Petitioner contends counsel was ineffective because trial counsel convinced petitioner to reject the trial court's offer for a negotiated disposition of four years in state prison in exchange for pleading guilty to all charges in the information. The Strickland standard also applies to claims of ineffective assistance involving counsel's advice during the plea bargain process. Missouri v. Frye, ––– U.S. ––––, 132 S. Ct. 1399, 182 L.Ed.2d 379 (2012); Lafler v. Cooper, ––– U.S. ––––, 132 S. Ct. 1376, 182 L.Ed.2d 398 (2012); Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 176 L.Ed.2d 284 (2009); Hill v. Lockhart, 474 U.S. 52, 58, 106 S. Ct. 366, 88 L.Ed.2d 203 (1985). The Supreme Court has not defined the duties and responsibilities of defense counsel at the plea bargain stage:

> Bargaining is, by its nature, defined to a substantial degree by personal style. The alternative courses and tactics in negotiation are so individual that it may be neither prudent nor practicable to try to elaborate or define detailed standards for the proper discharge of defense counsel's participation in the process.

Frye, 132 S. Ct. 1399. Nonetheless, the Court has held that provided discrete rules with regard to blatantly incorrect advice at the plea bargain stage, see e.g. Padilla, 559 U.S. at 368 (constitutionally ineffective assistance when counsel provided petitioner false assurance that petitioner's conviction would not result in deportation despite the relevant statute clearly stating that deportation was mandatory) and with regard to defense counsel's "duty to communicate formal offers from the prosecution to accept a plea on terms and conditions that may be favorable to the accused," Frye, 132 S. Ct. at 1408. As to the prejudice prong, petitioner "must show the

---

"regarding an alleged altercation in which the victim is alleged to have stabbed another student." RT 109–10.

outcome of the plea process would have been different with competent advice." Lafler, 132 S. Ct. at 1384 (internal quotations and citations omitted); see also Frye 132 S. Ct. at 1410–11 (With respect to lapsed offers, petitioner must show "a reasonable probability that he would have accepted the lapsed plea[,] . . . that the prosecution would have adhered to the agreement, and that it would have been accepted by the trial court.").

Petitioner failed to show that trial counsel's representation and advice relating to petitioner's June 2, 2011 plea offer fell below an objective standard of reasonableness. He provides no evidence substantiating his claim that trial counsel ignored his request to accept the plea bargain. Rather, in support of this claim, petitioner attaches a letter from trial counsel, dated November 2, 2012, clarifying a question petitioner had regarding a June 2, 2011 plea offer of four years in state prison. (ECF No. 1, Ex. A.) That letter merely confirms that the court made an offer and explains the terms of that offer. It does not show that trial counsel persuaded petitioner to reject the offer.

The record shows that on June 2, 2011, trial counsel sought to continue trial because she believed further investigation was necessary. RT 91–92. However, at petitioner's behest because he did not want to waive time, trial counsel moved forward with the original trial date. RT 92. The record shows that trial counsel felt she could have a stronger case with further investigation and was not confident in the defense based on the information she had at her disposal. Nonetheless, petitioner requested that trial proceed as scheduled. This contradicts petitioner's assertion that he purportedly requested trial counsel to accept a plea bargain and was ignored. If trial counsel ignored petitioner's request and there is no evidence to suggest that was the case, the time to voice his dissatisfaction would have been at the pre-trial conference on June 2, 2011. Petitioner did not speak at that conference. RT 91–92.[3]

Petitioner also asserts that trial counsel provided ineffective advice, convincing petitioner not to accept the plea deal. He does not state what advice trial counsel gave and does not explain how that advice, at a bare minimum, fell below an objective standard of reasonableness. See

---

[3] Petitioner does not contend trial counsel failed to communicate the court's offer to him. As such, Frye is inapplicable.

11

Strickland, 466 U.S. at 688. As noted above, trial counsel believed further investigation was necessary but petitioner disagreed. Trial counsel followed petitioner's wishes. As such, petitioner's assertion that trial counsel convinced him to reject a plea bargain—based on trial counsel's confidence that she could obtain an acquittal—is unsubstantiated. Petitioner fails to demonstrate any deficient performance by trial counsel.

The state superior court reasonably concluded that petitioner's ineffective assistance of counsel claim was based on unsubstantiated, conclusory allegations. Accordingly, the state court's determination of petitioner's ineffective assistance of counsel claim was not an unreasonable application of Strickland. This claim must be denied.

CONCLUSION

For all the foregoing reasons, the petition should be denied. Pursuant to Rule 11 of the Federal Rules Governing Section 2254 Cases, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. A certificate of appealability may issue only "if the applicant has made a substantial showing of the denial of a constitution right." 28 U.S.C. § 2253(c)(2). For the reasons set forth in these findings and recommendations, a substantial showing of the denial of a constitutional right has not been made in this case.

Accordingly, IT IS HEREBY RECOMMENDED that:

1. Petitioner's petition for writ of habeas corpus (ECF No. 1) be denied; and

2. The District Court decline to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a documents should be captioned

////
////
////
////
////

1  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
2  shall be served and filed within fourteen days after service of the objections.  Failure to file
3  objections within the specified time may waive the right to appeal the District Court's order.
4  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated:  January 22, 2015

_____
CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

10 / will1407.hc